**James A. PICARD, Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 97–70954.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 11, 1998.

Decided Jan. 26, 1999.

Martin J. Tierney, San Francisco, California, for the petitioner-appellant.

Regina S. Moriarty, Tax Division, United States Department of Justice, Washington, DC, for the respondent-appellee.

Before: FLETCHER, FERGUSON and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

The appellant James A. Picard ("Picard") challenges the Tax Court's ruling that his disability retirement benefits are taxable under Internal Revenue Code ("I.R.C.") § 61(a). The Tax Court held that the reduction of Picard's disability-retirement benefits on the twenty-fifth anniversary of his date of hire constituted a determination of benefits by reference to length of service, thereby removing the benefits from tax exclusion under I.R.C. § 104(a)(1)'s exemption for disability compensation. We have jurisdiction pursuant to 26 U.S.C. § 7482(a)(1) and 28 U.S.C. § 1291, and we reverse.

Facts

On October 31, 1966, Picard became a member of the City of Oakland ("Oakland") police force. Approximately six years later, because of physical injuries sustained in the line of duty, Picard was granted a disability-retirement pension. Oakland's disability-retirement plan under the city's charter (the "Plan")[1] provided that Picard would receive an amount equal to 75 percent of his base salary as a disability retirement benefit. Picard would receive this amount until the date on which he would have completed twenty-five years of service. At that time, Picard would have qualified for service retirement had he rendered service without interruption. Although Picard had not been accruing service-retirement credit, the Plan provided that, as of such date, Picard would receive a benefit equal to the retirement benefit he

---

**1.** The Oakland Charter establishes two types of retirement for members of the Oakland Police Department: retirement incident to the completion of the specified years of service (section 2608 retirement for service) and retirement incident to disability caused by injury in the performance of duty (section 2610 retirement for disability).

would have received had he retired after having worked twenty-five years.

On October 31, 1991, twenty-five years from the date Picard joined the police force, Oakland reduced Picard's pension from 75 percent to 50 percent of his former base salary pursuant to the Plan.

The Commissioner of Internal Revenue (the "Commissioner") determined that, as of October 31, 1991, because the amount of Picard's disability benefit was determined by reference to his length of service, Picard did not qualify for the 26 U.S.C. § 104(a)(1) exemption he had formerly invoked; thus, Picard was required to report his 1992 disability pension as income. Picard did not file a 1992 income tax return.

After the Commissioner assessed a $3,169 deficiency in Picard's 1992 income tax, Picard challenged the deficiency in the United States Tax Court. The issue was submitted to the Tax Court based on stipulated facts. Both parties agreed that the disability-retirement benefits paid to Picard prior to October 31, 1991, were excludable from Picard's gross income under § 104(a)(1). With regard to payments after October 31, 1991, the Tax Court ruled for the Commissioner. The Tax Court held that Picard's reduced disability income was no longer excludable under § 104(a)(1) because the Plan's reduction of Picard's pension on the twenty-fifth anniversary of Picard's first date of employment was the equivalent of a benefits determination made by reference to Picard's length of service.

## Discussion

Section 104(a)(1) excludes from gross income amounts received under workmen's compensation acts as compensation for personal injuries.[2] More important to our analysis, Treasury Regulation 1.104–1(b) limits the scope of § 104(a)(1). It specifies that the § 104(a)(1) exclusion does not apply to a retirement pension "to the extent that it is determined by reference to the employee's age and length of service."[3] Consequently, whether after October 31, 1991 Picard's recalculated benefits are excludable from gross income depends on whether the Plan determines Picard's benefits by reference to his length of service.

When a disability-based retirement formally transfers to service retirement on the attainment of a certain employment anniversary, the payments received thereafter are no longer in the nature of workmen's compensation but are fully taxable. See Wiedmaier v. Commissioner, T.C. Memo.1984–540, 1984 WL 15183 (1984), aff'd. 774 F.2d 109 (6th Cir.1985). Here, Picard's disability benefits did not transfer to a service-retirement pension. Picard was neither transferred out of the Plan's section 2610(a) disability-retirement system nor placed into the Plan's section 2608 service-retirement system. His recalculated benefits were determined by his date of hire, not by reference to his "length of service." The reduction in Picard's disability benefits, creating parity between disability and regular service retirees, did not, by itself, amount to a conversion of his benefits. Cf. Givens v. Commissioner, 90 T.C. 1145, 1988 WL 59902 (1988); Dyer v. Commissioner, 71 T.C. 560, 1979 WL 3701 (1979) (both recognizing that parity among benefits does not per se remove benefits from the purview of worker's compensation).

2. Specifically, § 104(a)(1) provides:
   (a) In general.—Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include:
   (1) amounts received under workmen's compensation acts as compensation for physical injuries or sickness;
   26 U.S.C. § 104(a)(1).

3. Treasury Regulation § 1.104–1(b) provides in pertinent part:
   Section 104(a)(1) excludes from gross income amounts which are received by an employee under a workmen's compensation act ... or under a statute in the nature of a workmen's compensation act which provides compensation to employees for personal injuries or sickness incurred in the course of employment.... However, section 104(a)(1) does not apply to a retirement pension or annuity to the extent that it is determined by reference to the employee's age or length of service, or the employee's prior contributions, even though the employee's retirement is occasioned by an occupational injury or sickness.
   26 C.F.R. § 104–1(b).

Relying upon *Mabry v. Commissioner*, T.C. Memo.1985–328, 1985 WL 14951 (1985),[4] and *Wiedmaier v. Commissioner*, T.C. Memo.1984–540, 1984 WL 15183 (1984), *aff'd.* 774 F.2d 109 (6th Cir.1985),[5] the Commissioner argues, and the Tax Court held, that Picard's benefits formally transferred to service retirement and thereby became taxable. Both *Mabry* and *Wiedmaier*, like the case at hand, involved arrangements by which disability-retirement payments were initially excludable under § 104(a)(1) and were subsequently recomputed on the date when the disabled employees would have qualified for service retirement had they continued to work uninterrupted. The recomputed payments were set at the reduced amount the employees would have received had they taken service retirement on that date, treating the time working and the time spent on disability as equivalent for this purpose. *Mabry* and *Wiedmaier* concluded that payments resulting from such a recomputation were "determined by reference to the employee's age or length of service" within the meaning of Treasury Regulation 1.104–1(b) and, therefore, taxable.

*Mabry* and *Wiedmaier*, however, differ materially from the present case. In *Mabry*, petitioner's retirement benefits were "shifted from disability-retirement benefits ... [and] changed to reduced payments under the regular retirement program...." *Mabry*, T.C. Memo 1985–328. The taxpayer "started to receive new and different payments based on his age and years of service ... under different provisions of the city Charter." *Id.* In other words, unlike here, the city's charter converted the payments in *Mabry* to service-retirement benefits.

Picard's benefits, on the other hand, could not be determined by reference to his age or length of service. The Tax Court attempted to reconcile this apparent distinction by determining that, in Picard's case, as in *Mabry*, the Plan "*deem[s]* time spent on disability as equivalent to time spent actively working, and counting both in setting the date when a disabled employee was treated *as if* he had taken service retirement, with a corresponding adjustment to his retirement payments." *Picard*, T.C. Memo.1997–320 (emphasis in original).

This attempted distinction misapplies the facts of this case. As *Mabry* notes, the fundamental question in determining whether benefits are excludable under § 104(a)(1) is "upon what basis were the retirement payments in question paid?" *Mabry*, T.C. Memo 1985–328. The taxpayers in *Mabry* and *Wiedmaier*, at the time their benefits were reduced, qualified for regular service retirement, regardless of their continued disability. Picard, on the other hand, qualified only for disability-retirement benefits. Had Picard become "able" just one day before his benefit reduction, he would have qualified for neither service nor disability retirement benefits. To hold in favor of the Commissioner in this case, we would have to do something that neither *Mabry* nor *Wiedmaier* do—namely, hold that benefits are determined by reference to length of service even though a beneficiary would not qualify for a nondisability-based retirement. The facts of this case do not permit such a holding.

4. *Mabry* involved payments effectively under the same provisions of the Oakland Charter as are at issue in this case. *Mabry*, T.C. Memo 1985–328. In *Mabry*, when the taxpayer turned fifty-five, his disability-retirement benefits were recomputed as if he had taken service retirement on that date. *Id.* Based on stipulated facts that the taxpayer was given "service credit" during his disability period and would be eligible for regular service retirement were he not on disability, the court held that he received "new and different payments based on his age and years of service." *Id.* Thus, the recomputed benefits were no longer excludable from the taxpayer's income. *Id.*

5. *Wiedmaier* held that a reduction in benefits after twenty-five years of "creditable service" did not constitute a continuation of former disability-retirement benefits, but instead represented regular retirement benefits based on the length of service. *Wiedmaier*, T.C. Memo.1984–540. Creditable service was comprised of both active service and time spent on disability. *Id.* In concluding that the benefits were taxable, the court relied on the facts that (1) the taxpayer had to complete a new application for "reduced disability allowance" upon expiration of the period when receiving disability benefits and (2) service retirement provisions and disability-retirement provisions were calculated under the same plan provision. *Id.*

We conclude that the reduction in Picard's payments on the twenty-fifth anniversary of his date of hire did not convert his disability pension into a retirement pension. Because Picard's benefits were determined neither by reference to his age nor his length of service, his recalculated benefits remain excludable from income under I.R.C. § 104(a)(1).

REVERSED.