T.C. Memo. 2008-101

UNITED STATES TAX COURT

GEORGE AND HAZELANN TATEOSIAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13019-05.              Filed April 16, 2008.

<u>Thomas E. Brever</u>, for petitioners.

<u>Lisa R. Woods</u>, for respondent.


MEMORANDUM OPINION

KROUPA, <u>Judge</u>:  Respondent determined a $10,085 deficiency
in petitioners' Federal income tax and a $2,017 accuracy-related
penalty for 2003.  Two issues are presented for our decision.
The first is whether certain payments that petitioner received
from the Public Employees Retirement Association of Minnesota

(PERA) are disability payments and excludable from gross income or pension payments and includable. We hold that they are includable in income. The second issue is whether petitioners are liable for the accuracy-related penalty under section 6662(a).[1] We hold that they are not.

## Background

This case was submitted fully stipulated pursuant to Rule 122. The stipulation of facts and the accompanying exhibits are incorporated by this reference. Petitioners resided in St. Paul, Minnesota at the time their petition was filed.

George Tateosian (petitioner) was born on October 28, 1927, and became a member of the Saint Paul Police Department in 1955. By reason of an injury sustained in the line of duty, he was permanently disabled on June 18, 1959, after fewer than 5 years of service. The St. Paul Police Relief Association (SPPRA) awarded petitioner an on-duty-disability pension on August 1, 1960. Initially, petitioner's disability payment was determined without regard to his age or length of service. Petitioner began receiving disability benefits in the sum of 40 units per month under this regimen in 1960. A "unit" was defined as "one-hundredth of the current maximum monthly pay of a police officer

---

[1]All section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

in the police service of the city." Petitioner's units were not recalculated, but they were increased for cost-of-living adjustments.

Petitioner initially received his payments from his local relief association, SPPRA. At some point, SPPRA began treating petitioner's payments as taxable. SPPRA then consolidated with PERA in 1994. At the time of the consolidation, petitioner signed a form electing PERA to provide his future payments under the Public Employees Police and Fire Fund Benefit Plan (PEPFF Benefit Plan), as set forth by Minn. Stat. Ann. ch. 353 (West 2004).

Petitioner received $37,271 from PERA in 2003. PERA issued petitioner a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., indicating that petitioner received $37,271 in taxable income for 2003. Petitioners did not report this amount on their tax return for 2003.

## Discussion[2]

The question we consider is whether the payments received are includable in petitioners' income for 2003. Petitioner contends that the disputed distributions are excludable from gross income as disability payments in the same manner as

_____

[2]There has been no question raised in this case concerning which party bears the burden of proof or the burden of going forward with the evidence.

worker's compensation.  Respondent argues that the payments are includable in petitioner's income because they had been converted to pension payments.

Gross income includes all income from whatever source derived unless excludable by a specific provision of the Internal Revenue Code.  See sec. 61(a).  Amounts received as compensation for personal injuries under worker's compensation acts and statutes in the nature of a worker's compensation act are excluded from gross income.  See sec. 104(a)(1); sec. 1.104-1(b), Income Tax Regs.  Courts have strictly construed this exclusion so as to conform with the general rule that income is taxable unless specifically excluded.  McDowell v. Commissioner, T.C. Memo. 1997-500; see also Kane v. United States, 43 F.3d 1446, 1449 (Fed. Cir. 1994).

A statute is in the nature of a worker's compensation act only if it provides disability payments solely for service-related personal injury or sickness.  Take v. Commissioner, 82 T.C. 630, 634 (1984), affd. 804 F.2d 553 (9th Cir. 1986).  A retirement pension that is determined by reference to the employee's age or length of service, even though the employee's retirement is occasioned by injury, is includable in income.  Wiedmaier v. Commissioner, T.C. Memo. 1984-540, affd. 774 F.2d 109 (6th Cir. 1985); Sec. 1.104-1(b), Income Tax Regs.

This Court has previously considered the nature of payments under certain State disability and/or pension programs. Levesque v. Commissioner, T.C. Memo. 1999-57; Picard v. Commissioner, T.C. Memo. 1997-320, revd. 165 F.3d 744 (9th Cir. 1999); Mabry v. Commissioner, T.C. Memo. 1985-328; Wiedmaier v. Commissioner, supra. Mabry and Wiedmaier involved payments to disability retirees that were initially excludable but became includable in income when the disabled taxpayers would have qualified for a service retirement if they had continued in active work status. This Court held in both instances that payments under those circumstances did not meet the requirements for exclusion under section 104(a)(1) because benefits were formally transformed into service retirement when the disabled employee reached a certain age and/or completed a certain number of years of service.[3] It

---

[3]In one instance, the taxpayer's pension plan labeled his benefits a "reduced disability allowance". Wiedmaier v. Commissioner, T.C. Memo. 1984-540, affd. 774 F.2d 109 (6th Cir. 1985). The Court nevertheless held that the reduced disability allowance was taxable. Id. Petitioner's disability/retirement fund treated his payments during 2003 as taxable and nothing in the record indicates that the fund labeled them "disability" payments.

In another case, the Court of Appeals for the Ninth Circuit considered whether certain payments were taxable. Picard v. Commissioner, 165 F.3d 744 (9th Cir. 1999), revg. T.C. Memo. 1997-320. The Court of Appeals distinguished the holdings in Mabry v. Commissioner, T.C. Memo. 1985-328, and Wiedmaier v. Commissioner, supra, in reversing this Court. That situation involved an Oakland police officer who sustained injuries while on duty. Picard v. Commissioner, supra at 744. The disability retirement plan provided that the amount the taxpayer received would be reduced on the date on which he would have completed 25

(continued...)

was explained in Mabry that to be excludable, payments may be based only on disability and that when other factors, including age and length of service, are taken into account, the payments will not fall within section 104(a)(1).

Determination of Petitioner's Benefits

We look to State law in our consideration of whether the payments received are disability or retirement payments. Accordingly, we must examine the bylaws of petitioner's local relief association and the applicable Minnesota statutes to determine whether petitioner must include the payment in income.

The SPPRA bylaws define a "Duty Disability Pensioner" as a member who has been permanently disabled so as to render necessary his retirement from active police service because of an injury received while on duty. A duty disability pensioner receives 40 units per month if the retirement occurs during the first 20 years of service.[4] Under this regimen, petitioner began

---

[3](...continued)
years of service, which was when he would have qualified for retirement if he had never become disabled. Id. The Court of Appeals held that the payments were disability benefits and excludable, reasoning that at the time the police officer's pension was reduced, he was not transferred from a disability pension to a general pension. Id. at 746-747. The Court of Appeals also distinguished Picard from Mabry and Wiedmaier because the taxpayer's benefits were determined by the date of hire rather than reference to age or length of service.

[4]The provision states, in part, as follows:

If the date of such retirement [for physical
(continued...)

receiving disability benefits in the sum of 40 units per month in 1960.

The same bylaws define a service pensioner as a member who retires after having attained a minimum age of 50 and having at least 20 years of service in the police department. Notably, service pensioners also receive a basic pension of 40 units per month under the SPPRA bylaws. The bylaws do not provide for the conversion of disability benefits into retirement benefits.

Legislative Changes Affecting SPPRA

In 1982 Minnesota enacted statutes that affected many recipients of disability pensions. Minn. Stat. Ann. secs. 423A.11, 423A.15 (West 2001). Minn. Stat. Ann. sec. 423A.11 affects individuals receiving a disability benefit from a local relief association on March 24, 1982. Minn. Stat. Ann. sec. 423A.15.[5] This provision terminated the disability benefit of a member of a local police relief association when that member's years of service credited for active duty coupled with his/her years of receipt of a disability benefit equaled the number of

---

[4](...continued)
    or mental disability because of injury
    received or suffered while on duty] is
    subsequent to January 1, 1949, he/she shall
    receive the sum of 40 units per month if the
    retirement is necessary during the first 20
    years of his/her service * * *.

[5]The texts of Minn. Stat. Ann. secs. 423A.11 and 423A.15 (West 2001) are reproduced in the appendix to this opinion.

years of service that would entitle him/her to a service pension of the disability benefit. See Minn. Stat. Ann. sec. 423A.11, subd. 1(b). This provision applies if the member does not have enough active-duty credit to entitle him/her to a service pension in an amount equal to the disability benefit when he/she attains the minimum age for retirement provided by the relief association's bylaws. See id. The disabled member is deemed a service pensioner after the disability benefit terminates and is entitled to receive a service pension in an amount equal to the disability benefit. Minn. Stat. Ann. sec. 423A.11, subd. 2. The disability benefit that was transformed into a service pension is then subject to any annual automatic adjustments applicable to any other service pension payable by the relief association. Id. Relief association members who meet the age and service requirements for termination of their disability benefits become ineligible for a disability benefit. Minn. Stat. Ann. sec. 423A.11, subd. 3.

Petitioner was receiving disability payments from SPPRA, a local relief association, on March 24, 1982; therefore, Minn. Stat. Ann. secs. 423A.11 and 423A.15 applied to him. Minn. Stat. Ann. secs. 423A.11, subd. 1(b), 423A.15. By March 24, 1982, the length of time that petitioner worked combined with the length of time that he received disability benefits was long enough to entitle him to a service pension in the amount of 40 units under

Minn. Stat. Ann. sec. 423A.11.  He also had reached 50 years of age, the minimum age for receipt of retirement as provided by the SPPRA bylaws.  Accordingly and consistent with the provisions of Minn. Stat. Ann. secs. 423A.11 and 423A.15, petitioner's disability benefits terminated on March 24, 1982.  Moreover, the same statute that terminated his disability benefit specifically deemed him to be a service pensioner.  See Minn. Stat. Ann. sec. 423A.11, subd. 2.

Because Minn. Stat. Ann. sec. 423A.11 "terminated" petitioner's disability benefits and deemed him a service pensioner, his payments could no longer be characterized as compensation for personal injuries under a statute in the nature of a worker's compensation act.  See sec. 104(a)(1); sec. 1.104-1(b), Income Tax Regs.  Petitioner's benefits became taxable when they were legally and formally transformed into a service retirement upon petitioner's attaining a certain age and/or completing a certain number of years of service.  See Mabry v. Commissioner, T.C. Memo. 1985-328; Wiedmaier v. Commissioner, T.C. Memo. 1984-540.

These circumstances offer more persuasive support for treating petitioner's payments as retirement payments than the circumstances presented in Picard, Mabry, or Wiedmaier.  Minn. Stat. Ann. sec. 423A.11 explicitly terminates the disability benefit and deems the payments a retirement pension.  Moreover,

petitioner's benefits were determined by reference to his age and length of service, as distinguished from those at issue in Picard.  See Picard v. Commissioner, 165 F.3d at 746.

Minn. Stat. Ann. sec. 423A.11 changed petitioner's payment from a disability benefit into a retirement benefit, which was determined with respect to his age and length of service. Because petitioner elected PERA coverage under Minn. Stat. ch. 353 in 1994, we now address the effect, if any, of that election.[6]

In an attempt to overcome the effects of Minn. Stat. Ann. sec. 423A.11, petitioner makes three arguments with respect to his PERA election.  Petitioner first argues that his benefits are not within the statutory scheme of Minn. Stat. Ann. sec. 423A.11 because his benefits are under the statutory scheme of PERA. Petitioner's argument is not factually or legally supported by the record.  Petitioner elected PERA coverage in 1994 after his annuity payments had already been deemed to be retirement payments under Minn. Stat. Ann. sec. 423A.11 in 1982.  See Minn.

---

[6]Petitioner's election was consistent with the terms of Minn. Stat. Ann. sec. 353A.08 and Minn. Stat. Ann. sec. 353.659 (West 2004), which were enacted in 1987 to allow for a benefit recipient to elect to have his plan administered by the Public Employees Police and Fire Fund Benefit Plan (PEPFF Benefit Plan) under PERA or to continue coverage with his local relief association.  Petitioner chose to have his plan administered by PEPFF and PERA in 1994 because that is when his local relief association consolidated with PERA.

Stat. Ann. sec. 353.659.[7]  Accordingly, as of 1994 when he
elected PERA coverage under Minn. Stat. Ann. ch. 353,
petitioner's payments were retirement payments, and neither party
has presented any evidence or law that the characterization
changed after 1982.

Petitioner next argues that his payments were normal
disability benefits as described by Minn. Stat. Ann. sec.
353.656, subd. 6a.[8]  To that end, petitioner relies upon the
language of Minn. Stat. Ann. sec. 353.656, subd. 6a, which
provides that a member receiving a disability benefit "may
continue to receive a normal disability benefit" if he/she is
living at age 65.[9]

To thoroughly address this argument, we look to the complete
text of Minn. Stat. Ann. sec. 353.656.  Two provisions within
Minn. Stat. Ann. sec. 353.656 provide for members receiving
disability payments to make an election to continue to receive
disability payments in lieu of other forms of payment.

Minn. Stat. Ann. sec. 353.656 subd. 1a provides that a
disabled member of the PEPFF may elect to receive a normal

---

[7]The text of Minn. Stat. Ann. sec. 353.659 is reproduced in
the appendix to this opinion.

[8]The text of Minn. Stat. Ann. sec. 353.656 (West 2004) is
reproduced in the appendix to this opinion.

[9]Petitioner has not suggested that there exists, nor have we
found, any statutory directive automatically converting his post-
1994 payments from retirement into disability payments.

disability benefit.  Minn. Stat. Ann. sec. 353.656, subd. 6a, allows a member who receives a disability benefit to elect to continue to receive a normal disability benefit if he or she is living at age 65.  Petitioner provided no evidence that he made such an election.

Minn. Stat. Ann. sec. 353.656, subd. 6a, allows a member who receives a disability benefit to elect to continue to receive that benefit at age 65.  Petitioner presented no evidence of an election under this subdivision, either.  Also, Minn. Stat. Ann. sec. 353.656, subd. 6a, would not have applied to him because he was not receiving a disability benefit at the time this statute became applicable to PERA members.  He was already receiving a retirement benefit.  Moreover, PERA treated petitioner's benefits as taxable, and presumably PERA would not have done so had he made an election to receive normal disability benefits.

Petitioner's third argument is that Minn. Stat. Ann. sec. 423A.11 is being retroactively applied to him because he began receiving payments earlier than 1982.  The only tax year in this case is 2003.  Petitioner's retroactivity argument thus misses the mark.

We are sympathetic to petitioner, a police officer disabled in the line of duty.  Under the facts and circumstances of this case, however, petitioner's payments remained retirement payments once he elected PERA, and they are treated as retirement payments

under PERA and Minn. Stat. Ann. ch. 353.  Accordingly, we must hold that the payments are subject to tax.

Whether Petitioner Is Liable for the Accuracy-Related Penalty

Respondent determined that petitioners are liable for the accuracy-related penalty under section 6662(a) with respect to the underpayment attributable to petitioners' omission of the payments from PERA from their income.  Petitioners contend that they should not be liable for this penalty.  We agree with petitioners.

Respondent has the burden of production and must come forward with sufficient evidence that it is appropriate to impose the penalty.  See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).  Section 6662(a) imposes an accuracy-related penalty on any portion of an underpayment of tax required to be shown on a return if that portion is attributable to negligence or disregard of rules or regulations or any substantial understatement of income tax.  See sec. 6662(a) and (b)(1) and (2); sec. 1.6662-2(a)(1) and (2), Income Tax Regs.

Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the same circumstances.  Neely v. Commissioner, 85 T.C. 934 (1985).  Disregard is characterized as any careless, reckless, or intentional disregard.  See sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs.  Negligence is strongly indicated where a

taxpayer fails to include on an income tax return an amount of income shown on an information return. See sec. 1.6662-3(b)(1), Income Tax Regs.

There is a substantial understatement of income tax if the amount of the understatement exceeds the greater of either 10 percent of the tax required to be shown on the return, or $5,000. Sec. 6662(d)(1)(A); sec. 1.6662-4(b)(1), Income Tax Regs.

Petitioners failed to include as income the amount shown on the information return sent by PERA. Therefore, respondent has met his burden of production with respect to this penalty. The accuracy-related penalty does not apply, however, to any portion of an underpayment for which there was reasonable cause and where the taxpayer acted in good faith with respect to that portion. See sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs. The determination of whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 6664(c)(1); sec. 1.6664-4(b), Income Tax Regs. Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all the facts and circumstances, including the experience, knowledge and education of the taxpayer. Sec. 1.6664-4(b)(1), Income Tax Regs. We have chosen not to impose penalties in instances where an area of law is novel or the statute is

unclear.  See, e.g. <u>Williams v. Commissioner</u>, 123 T.C. 144, 153 (2004); <u>Hitchens v. Commissioner</u>, 103 T.C. 711, 719-720 (1994); <u>Facq v. Commissioner</u>, T.C. Memo. 2006-111.

Petitioner, a disabled policeman, received a disability annuity for many years.  Minnesota law then changed so that petitioner's annuity would, at a time defined in the statute, become a retirement annuity.  Further confusing this situation, petitioner's annuity changed from one payment plan to another and came under the provisions of a different Minnesota statute that used the term "disabled" in a manner that led petitioner to believe that his annuity continued as one subject to the disability provisions.  Considering petitioner's education, background, and the complexity of the statutory scheme in this case, we hold that petitioner acted with reasonable cause and in good faith based on his understanding of Minnesota law.  His misunderstanding was reasonable in light of the facts and circumstances here.  Petitioners have established that they had reasonable cause and acted in good faith when they failed to include the $37,271 in pension payments on their return.  Accordingly, we hold that petitioners are not liable for the accuracy-related penalty.

To reflect the foregoing,

Decision will be entered
for respondent with respect to
the deficiency and for
petitioners with respect to
the penalty under section
6662(a).

APPENDIX

Provisions of Chapter 423A

423A.11.  Recomputation of a disability benefit as a service
          pension

   Subdivision 1.  Termination of disability benefit. The
disability benefit of any disabled member of a local police or
salaried firefighters relief association, whichever is
applicable, shall terminate when the disabled member attains:

   (a) the minimum age for the receipt of a service pension
specified in the articles of incorporation or the bylaws of the
relief association, if the disabled member has credit for at
least the number of years of service for active duty which would
entitle the disabled member to a service pension in an amount
equal to the amount of the disability benefit; or

   (b) the age attained by the disabled member when the total
number of years of service credited for active duty and of years
of receipt of a disability benefit equals the number of years of
service credit which would entitle the disabled member to a
service pension in an amount equal to the amount of the
disability benefit, if the disabled member has credit for less
than the number of years of service for active duty which would
entitle the disabled member to a service pension in an amount
equal to the amount of the disability benefit when the disabled
member attains the minimum age for the receipt of a service
pension specified in the articles of incorporation or the bylaws
of the relief association.

   Subd. 2.  Amount of disability benefit recomputed as a service
pension. After the disability benefit terminates, the disabled
member shall be deemed to be a service pensioner and shall be
entitled to receive a service pension in an amount equal to the
disability benefit without any benefit offset required pursuant
to any applicable provision of law, articles of incorporation or
bylaws which was payable by the relief association immediately
prior to the date when the disability benefit terminated pursuant
to this section or the service pension otherwise payable based on
the service credit for active duty of the person, whichever
amount is greater. The disability benefit recomputed as a service
pension shall be subject to any annual automatic post retirement
adjustments or escalation applicable to any other service pension
payable by the relief association.

Subd. 3.   Limitation on disability benefit coverage. No relief association member who has attained the age and acquired the service credit for termination of a disability benefit specified in subdivision 1 shall be eligible for a disability benefit after that date. If a relief association member who is ineligible for a disability benefit solely pursuant to the limitation set forth in this subdivision becomes permanently unable to perform the duties of a police officer or a firefighter, whichever is applicable, by virtue of a medically determinable illness or injury, the member shall be eligible to a service pension in an amount equal to the amount of the disability benefit which would have been paid had the person been entitled to a disability benefit, or the amount of the service pension otherwise payable based on the service credit for active duty of the person, whichever is greater.

423A.15.   Effect of provisions for existing disability benefit recipients

   The provisions of section 423A.06 shall apply to any member of any applicable local relief association in active service on or after March 24, 1982. The provisions of section 423A.11 shall apply to any person receiving a disability benefit from a local relief association on or after March 24, 1982. The provisions of section 423A.12 shall apply to any person who returns to active employment as a police officer or firefighter, whichever is applicable, after receipt of a permanent disability benefit. The provisions of section 423A.14 shall apply to any person who first commences receipt of a disability benefit after March 24, 1982.

Provisions of Chapter 353 (PERA)

353.656. Disability benefits

   Subdivision 1. In line of duty; computation of benefits. A member of the police and fire plan who becomes disabled and physically unfit to perform duties as a police officer, firefighter, or paramedic as defined under section 353.64, subdivision 10, as a direct result of an injury, sickness, or other disability incurred in or arising out of any act of duty, which has or is expected to render the member physically or mentally unable to perform the duties as a police officer, firefighter, or paramedic as defined under section 353.64, subdivision 10, for a period of at least one year, shall receive disability benefits during the period of such disability. The benefits must be in an amount equal to 60 percent of the "average salary" as defined in section 353.651, subdivision 2, plus an additional percent specified in section 356.315, subdivision 6, of that average salary for each year of service in excess of 20

years. If the disability under this subdivision occurs before the member has at least five years of allowable service credit in the police and fire plan, the disability benefit must be computed on the "average salary" from which deductions were made for contribution to the police and fire fund.

Subd. 1a.  Optional annuity election. A disabled member of the police and fire fund may elect to receive the normal disability benefit or an optional annuity as provided in section 353.30, subdivision 3. The election of an optional annuity may be made prior to commencement of payment of the disability benefit or as specified under subdivision 6a. The optional annuity shall begin to accrue on the same date as provided for the disability benefit.

(1) If the person who is not the spouse of the member is named as beneficiary of the joint and survivor optional annuity, the person is eligible to receive the annuity only if the spouse, on the disability application form prescribed by the executive director, permanently waives the surviving spouse benefits under section 353.657, subdivisions 2 and 2a. If the spouse of the member refuses to permanently waive the surviving spouse coverage, the selection of a person other than the spouse of the member as a joint annuitant is invalid.

(2) If the spouse of the member permanently waives survivor coverage, the dependent child or children, if any, continue to be eligible for survivor benefits, including the minimum benefit under section 353.657, subdivision 3. The designated optional annuity beneficiary may draw the monthly benefit; however, the amount payable to the dependent child or children and joint annuitant must not exceed the 70 percent maximum family benefit under section 353.657, subdivision 3. If the maximum is exceeded, the benefit of the joint annuitant must be reduced to the amount necessary so that the total family benefit does not exceed the 70 percent maximum family benefit amount.

(3) If the spouse is named as the beneficiary of the joint and survivor optional annuity, the spouse may draw the monthly benefit; however, the amount payable to the dependent child or children and the joint annuitant must not exceed the 70 percent maximum family benefit under section 353.657, subdivision 3. If the maximum is exceeded, each dependent child will receive ten percent of the member's specified average monthly salary, and the benefit to the joint annuitant must be reduced to the amount necessary so that the total family benefit does not exceed the 70 percent maximum family benefit amount. The joint and survivor optional annuity must be restored to the surviving spouse, plus applicable postretirement adjustments under section 356.41, as

the dependent child or children become no longer dependent under section 353.01, subdivision 15.

Subd. 2.  Benefits paid under workers' compensation law. If a member, as described in subdivision 1, is injured under circumstances which entitle the member to receive benefits under the workers' compensation law, the member shall receive the same benefits as provided in subdivision 1, with disability benefits paid reimbursed and future benefits reduced by all periodic or lump sum amounts paid to the member under the workers' compensation law, after deduction of amount of attorney fees, authorized under applicable workers' compensation laws, paid by a disabilitant if the total of the single life annuity actuarial equivalent disability benefit and the workers' compensation benefit exceeds: (1) the salary the disabled member received as of the date of the disability or (2) the salary currently payable for the same employment position or an employment position substantially similar to the one the person held as of the date of the disability, whichever is greater. The disability benefit must be reduced to that amount which, when added to the workers' compensation benefits, does not exceed the greater of the salaries described in clauses (1) and (2).

Subd. 2a. Reduction restored; overpayment. A disabled member who is eligible to receive a disability benefit under subdivision 2 as of June 30, 1987, and whose disability benefit amount had been reduced prior to July 1, 1987, as a result of the receipt of workers' compensation benefits, must have the disability benefit payment amount restored, as of July 1, 1987, calculated in accordance with subdivision 2. However, a disabled member is not entitled to receive retroactive repayment of any disability benefit amounts lost before July 1, 1987, as a result of the reduction required before that date because of the receipt of workers' compensation benefits.

Any disability benefit overpayments made before July 1, 1987, and occurring because of the failure to reduce the disability benefit payment to the extent required because of the receipt of workers' compensation benefits, may be collected by the association through the reduction of disability benefit or annuity payment made on or after July 1, 1987, until the overpayment is fully recovered.

Subd. 3.  Nonduty disability benefit.  Any member of the police and fire plan who becomes disabled after not less than one year of allowable service because of sickness or injury occurring while not on duty as a police officer, firefighter, or paramedic as defined under section 353.64, subdivision 10, and by reason of

that sickness or injury the member has been or is expected to be unable to perform the duties as a police officer, firefighter, or paramedic as defined under section 353.64, subdivision 10, for a period of at least one year, is entitled to receive a disability benefit. The benefit must be paid in the same manner as if the benefit were paid under section 353.651. If a disability under this subdivision occurs after one but in less than 15 years of allowable service, the disability benefit must be the same as though the member had at least 15 years service. For a member who is employed as a full-time firefighter by the department of military affairs of the state of Minnesota, allowable service as a full-time state military affairs department firefighter credited by the Minnesota state retirement system may be used in meeting the minimum allowable service requirement of this subdivision.

Subd. 4. Limitation on disability benefit payments. (a) No member is entitled to receive a disability benefit payment when there remains to the member's credit unused annual leave or sick leave or under any other circumstances when, during the period of disability, there has been no impairment of the person's salary as a police officer or a firefighter, whichever applies.
(b) If a disabled member resumes a gainful occupation with earnings less than the disabilitant reemployment earnings limit, the amount of the disability benefit must be reduced as provided in this paragraph. The disabilitant reemployment earnings limit is the greater of:

(1) the salary earned at the date of disability; or

(2) 125 percent of the salary currently paid by the employing governmental subdivision for similar positions.

The disability benefit must be reduced by one dollar for each three dollars by which the total amount of the current disability benefit, any workers' compensation benefits, and actual earnings exceed the greater disabilitant reemployment earnings limit. In no event may the disability benefit as adjusted under this subdivision exceed the disability benefit originally allowed.

Subd. 5. Proof of disability. A disability benefit payment must not be made except upon adequate proof furnished to the association of the existence of such disability, and during the time when disability benefits are being paid, the association has the right, at reasonable times, to require the disabled member to submit proof of the continuance of the disability claimed. A person applying for or receiving a disability benefit shall provide or authorize release of medical evidence, including all

medical records and information from any source, relating to an application for disability benefits.

Subd. 5a.  Cessation of disability benefit. The association shall cease the payment of an in-line-of-duty or nonduty disability benefit the first of the month following the reinstatement of a member to full time or less than full-time service in a position covered by the police and fire fund.

Subd. 6. Repealed by Laws, 1993, c. 307, art. 4, § 54.

**Subd. 6a. Disability survivor benefits**.  If a member who is receiving a disability benefit under subdivision 1 or 3:

(a) dies before attaining age 65 or within five years of the effective date of the disability, whichever is later, the surviving spouse shall receive a survivor benefit under section 353.657, subdivision 2 or 2a, unless the surviving spouse elected to receive a refund under section 353.32, subdivision 1. The joint and survivor optional annuity under subdivision 2a is based on the minimum disability benefit under subdivision 1 or 3, or the deceased member's allowable service, whichever is greater.

(b) is living at age 65 or five years after the effective date of the disability, whichever is later, the member may continue to receive a normal disability benefit, or the member may elect a joint and survivor optional annuity under section 353.30. The optional annuity is based on the minimum disability benefit under subdivision 1 or 3, or the member's allowable service, whichever is greater. The election of this joint and survivor annuity must occur within 90 days of age 65 or the five-year anniversary of the effective date of the disability benefit, whichever is later. The optional annuity takes effect the first of the month following the month in which the person attains age 65 or reaches the five-year anniversary of the effective date of the disability benefit, whichever is later.

(c) if there is a dependent child or children under paragraph (a) or (b), the association shall grant a dependent child benefit under section 353.657, subdivision 3.

353.659.  Local relief association consolidation account benefits

For any person who has prior service covered by a local police or firefighters relief association which has consolidated with the public employees retirement association and who has elected the type of benefit coverage provided by the public employees police and fire fund benefit plan under section 353A.08 following

the consolidation, any retirement benefits payable are governed by the applicable provisions of this chapter. For any person who has prior service covered by a local police or firefighters relief association which has consolidated with the public employees retirement association and who has not elected the type of benefit coverage provided by the public employees police and fire fund benefit plan under section 353A.08 following the consolidation, any retirement benefits payable are governed by the provisions of sections 353B.01 to 353B.13 which apply to the relief association.