T.C. Summary Opinion 2011-55


UNITED STATES TAX COURT


DUANE A. AND RACHEL A. BAKKEN, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 13834-09S.              Filed April 19, 2011.


Thomas C. Morrison, for petitioners.

Christopher C. Fawcett, for respondent.


GERBER, Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year under consideration.

case.  Respondent determined a $5,834 income tax deficiency and a $1,167 section 6662(a) accuracy-related penalty for petitioners' 2006 taxable year.  The issue remaining[2] for our consideration is whether the distributions received during 2006 by Duane A. Bakken (petitioner) were excludable from gross income under section 104.

## Background

Petitioners resided in Montana at the time their petition was filed.  Petitioner was born in 1937 and began employment as a police officer for the city of Austin, Minnesota, on May 1, 1962.  On February 26, 1982, because of an injury he sustained in the line of duty, petitioner became permanently disabled and unable to perform his duties as a police officer.  Petitioner's injuries occurred while he was en route to investigate a criminal act in progress.  Petitioner was a member of the Austin Policemen's Benefit Association (APBA), and on June 17, 1983, the APBA approved his application for a disability pension.  At the time of his disability and when his pension was approved, petitioner had completed 18 years, 6 months, and 11 days of service as a

---

[2]At trial respondent conceded that petitioners are not liable for a sec. 6662(a) accuracy-related penalty for their 2006 tax year.

police officer and was not qualified to retire.[3]  Under the APBA plan disability benefits were calculated at a rate of 50 percent of the base pay of an active first class patrolman who had reached 50 years of age with 20 or more years of service.  Under the APBA plan active police officers were entitled to retire when they had a combination of at least 20 years "of service as a patrolman" and "after he has arrived at the age of fifty years or more".  Under the APBA plan disabled police officers received the same pay as a police officer who had qualified to retire, even if the disabled officer did not have sufficient years of service to retire.

For taxable years after petitioner reached age 50 (1987), APBA began issuing Forms 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., reflecting that his distributions were taxable. Effective January 1, 1994, Minnesota State statutes facilitated the switch of the administration of the APBA to the Minnesota Public Employees Retirement Association (MPERA).  For the 2006 tax year MPERA issued petitioner a Form 1099-R reflecting that his distributions totaling $41,652.72 were taxable.

---

[3]On the basis of the date that petitioner began his service, he would have had over 21 years of service at the time his pension was approved.  The difference is attributable to time lost when he was unable to work because of other serious injuries incurred in the line of duty.

At the time that MPERA took over the administration of the APBA plan, petitioner remained under the terms of the APBA plan. After MPERA took over the administration of the plan, they offered both disability beneficiaries and retirees the opportunity to elect a cost of living allowance (COLA) instead of the existing plan's increases based upon active police officers' raises. Petitioner elected the COLA increases. Petitioner otherwise remained under the terms of the APBA plan after his election. Accordingly, from December 1, 1993, petitioner's benefits were based on 50 percent of the current pay of an active first class patrolman under the ABPA plan as of December 1, 1993, plus any COLA that accrued after that date.

Following his 50th birthday, when APBA began withholding from his benefits, petitioner contacted APBA to inquire why they had unilaterally decided to change his benefits status from disability to retirement even though he had not qualified for retirement under the APBA plan. Petitioner's gross benefits did not change when APBA began treating his disability benefits as retirement benefits. If petitioner's benefits were from retirement, however, they would be subject to Federal income tax. Accordingly, petitioner expressed his disagreement with this change in treatment, as he continued to be disabled and was unable to work. Petitioner explained to the APBA that it was his disability that prevented him from completing sufficient service

as a patrolman to qualify for retirement from the police department under the APBA plan. APBA, however, continued to treat petitioner's benefits as being for retirement and reported to MPERA (when they began administering the APBA plan) that petitioner's benefits were attributable to retirement.

Initially, when he began receiving Forms 1099-R, petitioner reported his benefits as taxable for Federal income tax purposes. Sometime after 2001, however, petitioner learned from another disabled Austin police officer that their disability benefits should not have been classified as retirement benefits and that the amounts received were not subject to Federal income tax. Petitioner hired a tax professional, who filed refund claims for all open years, including 1999 through 2001, and he received refunds (without litigation or controversy) of the Federal income tax paid for those years. Also, from that time forward, including 2006, on the advice of his tax professional/return preparer, petitioner did not report, as taxable, the benefits received.

## Discussion

The parties agree that petitioner's benefits were not taxable before his 50th birthday. Respondent, however, contends that following petitioner's 50th birthday, his benefits became taxable. Conversely, petitioner contends that from the first day

of his disability, his benefits were excludable under section 104 because of his disability.

Section 104(a)(1) permits the exclusion from gross income of amounts received under worker's compensation acts as compensation for personal injuries. In particular, section 1.104-1(b), Income Tax Regs., limits the section 104(a)(1) exclusion to certain benefits. That regulation specifies that the section 104(a)(1) exclusion does not apply to benefits "to the extent that [they are] determined by reference to the employee's age or length of service". The parties also agree that petitioner's benefits would not be taxable if they are found to be for disability rather than retirement.

Respondent relies on Minnesota law, Minn. Stat. Ann. sec. 423A.11 (West 2008), and has argued that petitioner's benefits are required to be treated as received for retirement; i.e., based on his age and length of service. In Tateosian v. Commissioner, T.C. Memo. 2008-101, we held that "Because Minn. Stat. Ann. sec. 423A.11 'terminated' * * * [the taxpayer's] disability benefits and deemed him a service pensioner, his payments could no longer be characterized as compensation for personal injuries under a statute in the nature of a worker's compensation act." (Emphasis added.) Unlike Tateosian, however, petitioner's case would have been appealable to the Court of

Appeals for the Ninth Circuit.[4]  In <u>Picard v. Commissioner</u>, 165

F.3d 744 (9th Cir. 1999), revg. T.C. Memo. 1997-320, the Court of

Appeals reversed our decision and held that the taxpayer had

received disability retirement (as opposed to service retirement)

benefits because his benefits could not be determined by

reference to his age or length of service.  The Court of Appeals

explained:

> Picard's benefits * * * could not be determined by
> reference to his age or length of service.  The Tax
> Court attempted to reconcile this apparent distinction
> by determining that, in Picard's case, as in <u>Mabry [v.
> Commissioner</u>, T.C. Memo. 1985-328], the Plan "<u>deem[s]</u>
> time spent on disability as equivalent to time spent
> actively working, and counting both in setting the date
> when a disabled employee was treated <u>as if</u> he had taken
> service retirement, with a corresponding adjustment to
> his retirement payments."  <u>Picard</u>, T.C. Memo. 1997-320
> (emphasis in original).
>
> This attempted distinction misapplies the facts of
> this case.  As <u>Mabry</u> notes, the fundamental question in
> determining whether benefits are excludable under
> § 104(a)(1) is "upon what basis were the retirement payments
> in question paid?"  <u>Mabry, T.C. Memo 1985-328</u>.  The
> taxpayers in <u>Mabry</u> and <u>Wiedmaier [v. Commissioner</u>, T.C.
> Memo. 1984-540, affd. 774 F.2d 109 (6th Cir. 1985)], at the
> time their benefits were reduced, qualified for regular
> service retirement, regardless of their continued
> disability.  Picard, on the other hand, qualified only for
> disability-retirement benefits.  Had Picard become "able"
> just one day before his benefit reduction, he would have
> qualified for neither service nor disability retirement
> benefits.  To hold in favor of the Commissioner in this
> case, we would have to do something that neither <u>Mabry</u> nor
> <u>Wiedmaier</u> do--namely, hold that benefits are determined by

---

[4]Although under sec. 7463(b) this case is not appealable, we afford petitioners the same result that they would have obtained in their particular appellate circuit, which in this case is the Court of Appeals for the Ninth Circuit.

reference to length of service even though a beneficiary would not qualify for a nondisability-based retirement. The facts of this case do not permit such a holding.

[*Id.* at 746.]

Petitioner's benefits also cannot be determined by reference to his age or length of service. When he reached age 50, petitioner had completed less than 20 years of service. APBA, pursuant to Minn. Stat. Ann. sec. 423A.11, deemed him a service retiree only after taking into consideration the number of years he had received disability benefits. As in Picard v. Commissioner, supra, this did not transform petitioner's benefits into service retirement benefits, as Minn. Stat. Ann. sec. 423A.11 merely recomputed the amount of disability benefits to which he was entitled. See Minn. Stat. Ann. sec. 423A.11, subdiv. 2 (titled "Amount of disability benefit recomputed as a service pension" (emphasis added)); Act of March 23, 1982, ch. 610, 1982 Minn. Laws 1458, 1458 ("providing for the recomputation of a disability benefit as a service pension upon the attainment of a certain age" (emphasis added)).

Under Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), we follow the Court of Appeals' decision in Picard v. Commissioner, supra, and hold that petitioner's benefits continue to be attributable to his disability and that he is entitled, under section 104, to exclude his pension distributions from income for 2006.

To reflect the foregoing and considering respondent's concession,

Decision will be entered
for petitioners.