JAY SEWARDS AND FRANCES SEWARDS, PETITIONERS
*v.* COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 24080–08.         Filed April 2, 2012.

P–H received disability retirement payments relating to injuries suffered in the course of his employment. The payment amount was determined, in part, by reference to P–H's length of service. Ps did not report any portion of the payments as taxable. *Held*: Pursuant to I.R.C. sec. 104(a)(1), the portion of P–H's disability retirement payments determined by reference to his length of service is not excludable from income. *See* sec. 1.104–1(b), Income Tax Regs. *Held*, *further*, Ps are not liable for an accuracy-related penalty.

*Marshall West Taylor*, for petitioners.
*Scott B. Burkholder*, for respondent.

## OPINION

FOLEY, *Judge*: The issues for decision, relating to petitioners' 2006 joint Federal income tax return, are whether petitioners may exclude certain retirement payments from income and whether petitioners are liable for a section 6662(a)[1] accuracy-related penalty. The parties submitted this case fully stipulated pursuant to Rule 122.

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Proce-

320

## *Background*

On November 29, 2000, after many years of employment with the Los Angeles County Sheriff's Department (Sheriff's Department), and because of service-connected injuries, Jay Sewards was placed on involuntary medical disability leave. While on disability leave, he was provided a continuation of his $14,093 per month salary (final compensation) for one year. Because he suffered his service-connected injury after more than 34 years of employment with the Sheriff's Department, Mr. Sewards was eligible for two types of retirement plans: a service retirement based on his length of service (service retirement) and a service-connected disability retirement based on his service-connected injuries (SCD retirement).

On an election form dated July 30, 2001, Mr. Sewards requested, and the Los Angeles County Employees Retirement Association (LACERA)[2] granted, a service retirement to take effect upon the expiration of his disability leave on October 31, 2001.[3] Service retirement was authorized for individuals who: had completed 20 years of service regardless of age; had attained the applicable compulsory age of retirement;[4] or had attained the age of 50, completed 10 years of service, and had no break from service which exceeded 12 months. California County Employees Retirement Law of 1937 (CERL) sec. 31663.26.[5] The amount of Mr. Sewards' service retirement payment was determined, by reference to his length of service,[6] to be $12,861 per month.[7]

On May 28, 2002, Mr. Sewards applied for and was granted SCD retirement retroactive to the date upon which his service retirement took effect. Thus, his SCD retirement replaced his service retirement. Individuals were eligible for

dure.

[2] LACERA was the legally constituted agency for management of retirement assets and payments to Los Angeles County employees.

[3] His service retirement was originally approved to take effect on October 9, 2001, but upon Mr. Sewards' request, his service retirement became effective immediately upon the expiration of his disability leave.

[4] The compulsory retirement age varied depending on the individual's job title. *See* Cal. Govt. Code secs. 31662.4–31663 (West 2008).

[5] CERL is codified in Cal. Govt. Code secs. 31450–31898 and adopted into L.A. County Code secs. 5.20.010–5.20.080.

[6] Mr. Sewards acquired service credit for each payroll period of county employment during which a retirement contribution was made.

[7] In subsequent years, this amount was increased to take into account cost of living adjustments.

SCD retirement if they were permanently incapacitated because of an injury or disease arising from their county employment. *Id.* secs. 31720, 31727.4. The SCD retirement plan would provide him with one-half of his final compensation (i.e., $7,046) or his full service retirement allowance (i.e., $12,861), whichever was higher. *Id.* sec. 31727.4. Thus, Mr. Sewards received his full service retirement allowance of $12,861 per month.

LACERA sent Mr. Sewards 2001 and 2002 Forms 1099–R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., indicating that his service retirement payments were taxable. After his SCD retirement became effective, LACERA sent him amended 2001 and 2002 Forms 1099–R which indicated that the taxable amount was not determined. LACERA later sent him 2003, 2004, and 2005 Forms 1099–R which also indicated that the taxable amount was not determined. In a letter dated December 20, 2006, LACERA notified Mr. Sewards that beginning in 2006 it would report as taxable 50% of his final compensation. Consistent with the letter, LACERA sent him a 2006 Form 1099–R indicating a portion of his SCD retirement payments was taxable.

On their joint 2006 Federal income tax return, petitioners did not report any portion of Mr. Sewards' SCD retirement payments as taxable. Respondent subsequently issued a statutory notice of deficiency determining that a portion of his SCD retirement payments was taxable and that petitioners were liable for a section 6662(a) accuracy-related penalty. On October 1, 2008, petitioners, while residing in Port Ludlow, Washington, filed their petition with the Court.

## *Discussion*

Section 104(a)(1) and the regulations thereunder provide that retirement payments are excludable from gross income if they are received pursuant to a workmen's compensation act or a statute in the nature of a workmen's compensation act. Sec. 1.104–1(b), Income Tax Regs. Section 104(a)(1) does not apply, however, to the extent the payments are determined by reference to the employee's age or length of service or the employee's prior contributions, even

if the employee's retirement is occasioned by occupational injury. Sec. 1.104–1(b), Income Tax Regs.

The statute authorizing payments to Mr. Sewards is in the nature of a workmen's compensation act[8] and Mr. Sewards suffered an injury which arose in the course of his employment. *See Givens v. Commissioner*, 90 T.C. 1145 (1998); sec. 1.104–1(b), Income Tax Regs. Thus, in order to determine whether his SCD retirement payments are excludable, we must examine whether the amounts received were determined by reference to his age, length of service, or prior contributions.

Petitioners contend that the entire retirement benefit is excludable.[9] We disagree. SCD retirees were guaranteed an annual retirement allowance payable in monthly installments equal to 50% of their final compensation (guaranteed amount).[10] CERL sec. 31727.4. If an individual qualified for a service retirement benefit that exceeded the guaranteed amount, however, that person was eligible to receive the higher amount. *Id.* sec. 31727.4. Accordingly, because Mr. Sewards' service retirement benefit (i.e., $12,861) was higher than the guaranteed amount (i.e., $7,046), his SCD retirement benefit amount was increased to his service retirement benefit amount, which was determined by reference to his length of service. *See* sec. 1.104–1(b), Income Tax Regs.; *cf. Picard v. Commissioner*, 165 F.3d 744 (9th Cir. 1999) (holding that reduction of taxpayer's disability retirement benefits was determined by reference to his date of hire rather than by his age or length of service), *rev'g* T.C. Memo. 1997–320. Thus, the portion exceeding the guaranteed amount is not excludable from income.

Respondent further determined that petitioners are liable for a section 6662(a) accuracy-related penalty relating to 2006. Section 6662(a) and (b)(2) imposes a 20% penalty on the amount of any underpayment of tax attributable to a substantial understatement of income tax. An understate-

---

[8] Respondent does not challenge that the statute was in the nature of a workmen's compensation act.

[9] Pursuant to sec. 7491(a), petitioners have the burden of proof unless they introduce credible evidence relating to the issue that would shift the burden to respondent. *See* Rule 142(a). Our conclusions, however, are based on a preponderance of the evidence, and thus the allocation of the burden of proof is immaterial. *See Martin Ice Cream Co. v. Commissioner*, 110 T.C. 189, 210 n.16 (1998).

[10] At the time of Mr. Sewards' retirement, the guaranteed amount was $7,046. In subsequent years, this amount was increased to account for cost of living adjustments.

ment is substantial if it exceeds the greater of $5,000 or 10% of the tax required to be shown on the return. Sec. 6662(d)(1)(A). Although petitioners substantially understated their income tax, section 6664(c)(1) provides that no penalty shall be imposed if there was reasonable cause for the underpayment and the taxpayer acted in good faith.

LACERA sent Mr. Sewards 2001, 2002, 2003, 2004, and 2005 Forms 1099–R which did not indicate a taxable amount. LACERA, in late 2006, sent a letter to him indicating it would begin reporting as taxable a portion of his SCD retirement benefits and, in 2007, sent him a Form 1099–R reflecting the taxable portion. Over the course of several years, the guidance provided by LACERA varied. Petitioners, in good faith, took reasonable efforts to assess their proper tax liability. Thus, petitioners had reasonable cause for the underpayment and are not liable for a section 6662(a) accuracy-related penalty.

Contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

*Decision will be entered under Rule 155.*