T.C. Memo. 2017-132

UNITED STATES TAX COURT

JACK HOWARD TAYLOR, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17349-15.                    Filed July 5, 2017.

P was a North Carolina fireman for over 24 years before retiring on disability in 1991. At that time he began receiving from LGERS a disability retirement allowance computed with reference to his age, length of service, and average final compensation. In a later year he also began receiving an FRSWPF pension. For 2012 P received information returns from LGERS and FRSWPF showing taxable distributions of $34,829 and $2,000, respectively, but reported only $2,324 of taxable retirement income. For 2012 P also failed to report as income certain distributions, an error he has since conceded.

Held: The LGERS and FRSWPF distributions are not excludable from gross income as amounts received under workmen's compensation acts as compensation for injuries or sickness because they are retirement pensions determined by reference to P's age or length of service, or his prior contributions. See sec. 1.104-1(b), Income Tax Regs.

[*2]   Jack Howard Taylor, pro se.

Corey R. Clapper and Amy Dyar Seals, for respondent.


MEMORANDUM OPINION


LARO, Judge:  This case arises out of respondent's adjustments to petitioner's return for the 2012 taxable year.  The case was submitted fully stipulated for decision without trial.  See Rule 122.[1]

Respondent determined a $3,806 deficiency in petitioner's Federal income tax for tax year 2012.  Petitioner has conceded all adjustments, save for the inclusion in taxable income of an additional $32,505 in benefits paid by the Local Governmental Employees' Retirement System of North Carolina (LGERS) and an additional $2,000 in benefits paid by the North Carolina Firemen and Rescue Squad Workers' Pension Fund (FRSWPF).[2]

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code (Code) applicable for the relevant years.  Rule references are to the Tax Court Rules of Practice and Procedure.

[2]LGERS reported total benefits paid of $35,153, with $34,829 taxable. FRSWPF reported total benefits paid of $2,040, with $2,000 taxable.  Petitioner on his return reported only $2,324 of taxable retirement income, which respondent treated in the notice of deficiency as allocable to the LGERS benefit.

**[*3]**   We decide whether respondent properly treated $34,829 paid by LGERS and $2,000 paid by FRSWPF as taxable retirement income.  We hold that he did.

## Background

### I.   Overview

The parties submitted this case fully stipulated under Rule 122.  The parties' stipulation of facts is incorporated herein.  Petitioner is a resident of Asheville, North Carolina.  This case is appealable to the Court of Appeals for the Fourth Circuit absent stipulation of the parties to the contrary.

### II.   Petitioner's Service as a Fireman and Subsequent Retirement

Petitioner was born in August 1944.  He was hired by the City of Asheville Fire Department on October 18, 1966.  His last day of work was March 10, 1991, and he retired on disability effective June 1, 1991, in his 24th year of service with the department.

LGERS began paying petitioner a disability retirement allowance on June 1, 1991, which was computed with reference to his age, length of service, and average final compensation before his disability retirement.  At an unspecified later date petitioner also began receiving a pension from FRSWPF.  Petitioner turned 60 in August 2004, whereupon, as he acknowledged on brief, LGERS sent

[*4] him a letter notifying him that he was being transferred from disability retirement to regular service retirement effective September 1, 2004.

III.  Petitioner's 2012 Retirement Benefits and Tax Return

For 2012 petitioner was paid $35,153 in retirement benefits by LGERS and $2,040 in retirement benefits by FRSWPF.  He was issued a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., by LGERS indicating that he had received $34,829 in taxable retirement benefits during the 2012 tax year.  Petitioner was also issued a Form 1099-R by FRSWPF showing that he had received $2,000 in taxable retirement benefits during the 2012 tax year.  Box 7 of each Form 1099-R was marked with the distribution code "7" indicating a normal distribution.

Petitioner timely filed a Form 1040, U.S. Individual Income Tax Return, for the 2012 tax year.  On his return petitioner reported $2,324 of taxable retirement income for that year.  Further, petitioner did not report any dividend income on the return, notwithstanding the issuance to him of a Form 1099-DIV, Dividends and Distributions, by National Financial Services, LLC, showing ordinary dividend income of $892 and capital gain distributions of $226.  Petitioner has since conceded respondent's adjustments related to these items of dividend income.

**[*5]** IV.     Notice of Deficiency and Petition

Respondent on April 6, 2015, issued a notice of deficiency to petitioner.  In the notice respondent made three adjustments relating to petitioner's 2012 taxable year:  (1) increased taxable dividends from zero to $892; (2) increased "Schedule D/capital gain dividends" from zero to $226; and (3) increased taxable retirement income from $2,324 to $36,829.  As noted above, petitioner has conceded the first two adjustments.  As to the third adjustment, respondent indicated that petitioner received taxable retirement income from two payors.  For the first, LGERS, respondent identified $2,324 as shown on petitioner's return and increased that amount by $32,505 to arrive at the $34,829 of taxable income reported on the Form 1099-R generated by LGERS.  For the second, FRSWPF, respondent identified zero as shown on petitioner's return and increased that amount by $2,000 to reflect the taxable income reported on the FRSWPF Form 1099-R.

The notice of deficiency specified that the last date to file a petition with this Court was July 6, 2015.  The petition was received by the Court and filed in the morning of July 7, 2015.  It was signed and dated by petitioner on July 5, 2015, and bore a postmark indicating that it was mailed by FedEx Standard Overnight service on July 6, 2015.  Since the petition was mailed timely using a

**[\*6]** designated private delivery service, see Notice 2015-38, 2015-21 I.R.B. 984, it is treated as filed timely, see sec. 7502(a), (f).

Discussion

I.     Overview

Generally, the Commissioner's determination of a taxpayer's liability for an income tax deficiency is presumed to be correct, and the taxpayer bears the burden of proving the determination improper by a preponderance of the evidence. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). We find that petitioner has failed to establish that respondent's determination of his tax liability was incorrect. We need not address whether under section 7491(a) the burden of proof has shifted from petitioner to respondent because there are no outstanding factual issues relevant to ascertaining petitioner's tax liability. The parties agree on the salient facts and dispute only the legal question of the proper classification of petitioner's retirement income.

II.    Includibility of Retirement Payments in Gross Income

Section 61(a) provides that unless a statutory exemption applies, "gross income means all income from whatever source derived". Pensions and retirement allowances are included in gross income unless excluded by law. Sec. 61(a)(11); sec. 1.61-11(a), Income Tax Regs. Any statutory exclusions from gross income

**[*7]** must be construed narrowly. <u>Commissioner v. Schleier</u>, 515 U.S. 323, 328 (1995); <u>see also</u> <u>Graves v. Commissioner</u>, 89 T.C. 49, 51 (1987) ("[E]xemptions and exclusions from taxable income should be construed narrowly, and the taxpayers must bring themselves within the clear scope of the exclusions.").

Under section 104(a)(1) gross income does not include amounts received under workmen's compensation acts as compensation for personal injuries or sickness. This exclusion also applies to statutes in the nature of workmen's compensation acts which provide compensation to employees for personal injuries or sickness incurred in the course of employment. Sec. 1.104-1(b), Income Tax Regs. The exclusion, however, "does not apply to a retirement pension or annuity to the extent that it is determined by reference to the employee's age or length of service, or the employee's prior contributions, even though the employee's retirement is occasioned by an occupational injury or sickness." <u>Id.</u>

Since the issuance of petitioner's retirement payments is governed by State law, to evaluate those benefits we look to the relevant North Carolina statutes. <u>Cf., e.g.</u>, <u>Green v. Commissioner</u>, T.C. Memo. 1994-264, 1994 WL 247039, at *3-*5 (looking to Connecticut State law to determine whether payments received by a policeman and fireman are excludable under section 1.104-1(b), Income Tax Regs.), <u>aff'd</u>, 60 F.3d 142 (2d Cir. 1995).

[*8] III.     North Carolina State Employee Retirement Provisions

        A.     LGERS

Article 3 of chapter 128 of the General Statutes of North Carolina establishes and governs LGERS, the retirement system for the State's counties, cities, and towns.  LGERS is a defined benefit plan funded by employer and employee contributions.  N.C. Gen. Stat. Ann. sec. 128-30 (Westlaw 2012).  Under the plan, an employee with at least five years of service may retire on a disability retirement allowance upon medical certification of incapacity for the further performance of his duties.  Id. sec. 128-27(c).  The five-year service minimum does not apply to law enforcement officers, firemen, and eligible rescue squad workers who become "incapacitated for duty as the natural and proximate result of injuries incurred while in the actual performance" of their duties.  Id.  Employees retiring by reason of disability may be required to undergo medical examinations annually for 5 years after their retirement and once every 3 years thereafter until they attain the age of 60 years.  Id. sec. 128-27(e).  A beneficiary's payments are reduced if he is determined to be engaged in or be able to engage in a gainful occupation paying more than a certain amount.  Id. sec. 128-27(e)(1).  In lieu of this reduction, the beneficiary irrevocably "may elect to convert his disability retirement allowance to a service retirement allowance calculated on the basis of

**[\*9]** his average final compensation and creditable service at the time of disability retirement and his age at the time of conversion to service retirement." Id.

An employee retiring for disability after July 1, 1982, "shall receive a service retirement allowance if he has qualified for an unreduced service retirement allowance". Id. sec. 128-27(d4). Otherwise, the allowance equals "a service retirement allowance calculated on the member's average final compensation prior to his disability retirement and the creditable service he would have had had he continued in service until the earliest date on which he would have qualified for an unreduced service retirement allowance." Id. The service retirement allowance for an employee not a law enforcement officer retiring from service on or after July 1, 1990, but before July 1, 1992, equals 1.64% of his average final compensation multiplied by the number of years of creditable service, provided that the service retirement date occurs (1) on or after his 65th birthday upon completing 5 years of service, (2) after completing 30 years of service, or (3) on or after his 60th birthday upon completing 25 years of service. Id. sec. 128-27(b12)(2). The retirement allowance is reduced if the employee did not satisfy the minimum service requirements. Id.

A former employee receiving a disability retirement allowance, upon reaching the earliest date on which he would have qualified for an unreduced

**[\*10]** service retirement allowance, is no longer subject to further medical reexaminations or a reduction in benefits by engaging in gainful employment with an employer not participating in LGERS. N.C. Gen. Stat. Ann. sec. 128-27(e)(6). Furthermore, the former employee ceases to receive a disability retirement allowance and instead is "considered a beneficiary in receipt of a service retirement allowance." Id. If a beneficiary's disability retirement allowance was reduced by reason of medical reexamination or ability to engage in a gainful occupation before the date on which he would have qualified for an unreduced retirement allowance, he has only the right to immediately convert to an early or service retirement allowance as provided in N.C. Gen. Stat. Ann. sec. 128-27(e)(1). Id.

### B. FRSWPF

Unlike LGERS, FRSWPF is governed by article 86 of chapter 58 of the General Statutes of North Carolina. It was established "to provide pension allowances and other benefits for eligible firemen and rescue squad workers in the State who elect to become members of the fund." N.C. Gen. Stat. sec. 58-86-1 (2015). Firemen who participate in the fund must contribute $10 monthly. Id. sec. 58-86-35.

[*11] An FRSWPF participant must have served 20 years as an eligible fireman or rescue squad worker and attained the age of 55 years to be entitled to a monthly pension from the fund. Id. sec. 58-86-55(a). Participants who became totally and permanently disabled as a result of discharging their official duties are entitled to the monthly benefit when they reach the age of 55 years. Id. sec. 58-86-55(c). Participants who became disabled other than in the line of duty, who leave their position because of the disability, and who have contributed to the pension fund for at least 10 years, may continue to contribute until they have made 20 years' worth of contributions and thereupon become eligible for benefits once they reach the age of 55 years. Id. sec. 58-86-55(d). In all cases, the monthly benefit is $170. Id. sec. 58-86-55.

IV.   Includibility of LGERS Retirement Payments in Petitioner's Gross Income

    A.   Petitioner's Arguments

To support his cause petitioner argues that the payments were neither a "retirement pension" nor an "annuity" as referenced in section 1.104-1(b), Income Tax Regs. ("[S]ection 104(a)(1) does not apply to a retirement pension or annuity to the extent that it is determined by reference to the employee's age or length of service[.]"). Petitioner points out that N.C. Gen. Stat. Ann. sec. 128-21(3), (15) defines both "annuity" and "pension" as "payments for life". Petitioner likens his

**[*12]** situation to that of the taxpayer in <u>Picard v. Commissioner</u>, 165 F.3d 744 (9th Cir. 1999), <u>rev'g</u> T.C. Memo. 1997-320, where the Court of Appeals for the Ninth Circuit held in the taxpayer's favor on the excludability of disability retirement income. Petitioner argues that, as was the case with the taxpayer in <u>Picard</u>, if he were determined to be fit for work, his disability retirement payments would cease. Because he was subject to medical reexaminations and his disability retirement allowance could be reduced if he were determined to be able to earn over a certain amount, <u>see</u> N.C. Gen. Stat. Ann. sec. 128-27(e)(1), petitioner maintains that his payments were not for life and so were not "a retirement pension or annuity" for purposes of section 1.104-1(b), Income Tax Regs.

Moreover, petitioner submits that while North Carolina law allows disability beneficiaries to "convert" a disability retirement allowance to a reduced service retirement allowance if they are determined to be engaged in or able to engage in a gainful occupation paying more than a certain amount, N.C. Gen. Stat. Ann. sec. 128-27(e)(1), the rule in subdivision (e)(6) of that section, which treats disability retirement beneficiaries as service retirement beneficiaries when they reach the earliest date on which they would have qualified for an unreduced service retirement allowance, uses a different word: "considered". Petitioner understands this to mean that beneficiaries are not transferred from one retirement

[*13] system to another. Petitioner reads into this Court's precedent, see, e.g., Tateosian v. Commissioner, T.C. Memo. 2008-101; Mabry v. Commissioner, T.C. Memo. 1985-328; Wiedmaier v. Commissioner, T.C. Memo. 1984-540, aff'd, 774 F.2d 109 (6th Cir. 1985), a requirement that there be a clear, unambiguous formal transfer of a taxpayer from one system to another.

B.    Respondent's Position

Respondent admits that petitioner was not eligible for an unreduced service retirement allowance under LGERS as of the date of his retirement, because he was only 46 years old with 24 years and 8 months of creditable service. However, respondent argues, since petitioner's disability retirement allowance was calculated with reference to his age and length of service, it is includible in his gross income. See sec. 104(a)(1); sec. 1.104-1(b), Income Tax Regs.

Respondent further asserts that, regardless of the initial classification of petitioner's retirement income, petitioner is no longer receiving a disability retirement allowance. Under N.C. Gen. Stat. Ann. sec. 128-27(e)(6), respondent points out, once a beneficiary in receipt of a disability retirement allowance becomes eligible for an unreduced service retirement allowance, he is deemed to be in receipt of the latter. This occurred, respondent claims, when petitioner turned 60 years old in 2004, 8 years before the taxable year in issue. Respondent

**[\*14]** looks for further support to several cases in this Court, <u>Tateosian v. Commissioner</u>, T.C. Memo. 2008-101, <u>Mabry v. Commissioner</u>, T.C. Memo. 1985-328, and <u>Wiedmaier v. Commissioner</u>, T.C. Memo. 1984-540, in which disability payments initially were excludable but later became includible in gross income when the taxpayer would have qualified for a service retirement pension had he continued to work.  As in those cases, respondent maintains, petitioner's retirement payments are includible in his gross income as nondisability pension income.

Respondent also distinguishes <u>Picard</u>, in which the Court of Appeals for the Ninth Circuit determined that the taxpayer's retirement payments were not taxable because they were determined by his date of hire and not by reference to his length of service.  Respondent argues that <u>Picard</u> differs from this case in two respects: first, petitioner's disability benefit and service retirement allowance both are computed with regard to his age and length of service and not his employment anniversary, <u>see</u> N.C. Gen. Stat. Ann. sec. 128-21(8) (defining "Creditable service" as "the total of 'prior service' plus 'membership service' plus service, both noncontributory and purchased, for which credit is allowable as provided in G.S. 128-26"); and second, petitioner's disability retirement allowance converted to a service retirement allowance when he turned 60 years of age in 2004.

**[*15]** C.     Classification of Petitioner's LGERS Retirement Income

While section 104(a)(1) excludes from gross income amounts received under workmen's compensation acts, section 1.104-1(b), Income Tax Regs., specifies that the exclusion "does not apply to a retirement pension or annuity to the extent that it is determined by reference to the employee's age or length of service, or the employee's prior contributions".  Petitioner ports the definitions of "annuity" and "pension" from the General Statutes of North Carolina to interpret the phrase "retirement pension or annuity" in the regulation.  However, the proper place to seek the definition of words as used in the Code and its appurtenant regulations is in the Federal tax law, not State statutes.  Cf. CRI-Leslie, LLC v. Commissioner, 147 T.C. ___, ___ (slip op. at 15) (Sept. 7, 2016) (looking to the Code for the definition of a term used therein).  Regulations are interpreted in the same manner as statutes, Guardian Indus. Corp. v. Commissioner, 143 T.C. 1, 12 (2014), which in turn are interpreted according to their plain meaning, looking "to the particular statutory language at issue, as well as the language and design of the statute as a whole", K Mart Corp. v. Cartier, 486 U.S. 281, 291 (1988).

Section 1.104-1, Income Tax Regs., does not define "pension".  However, within the Code's structure, subchapter D of chapter 1 of subtitle A, encompassing sections 401 through 436, governs pension plans.  Section 401(a) establishes what

**[\*16]** constitutes a "qualified" pension plan, while section 1.401-1(b)(1)(i),

Income Tax Regs., elaborates on the definition of "pension plan":

> A pension plan within the meaning of section 401(a) is a plan established and maintained by an employer primarily to provide systematically for the payment of definitely determinable benefits to his employees over a period of years, usually for life, after retirement. Retirement benefits generally are measured by, and based on, such factors as years of service and compensation received by the employees. The determination of the amount of retirement benefits and the contributions to provide such benefits are not dependent upon profits. * * * A pension plan may provide for the payment of a pension due to disability and may also provide for the payment of incidental death benefits through insurance or otherwise. * * *

There is nothing to support petitioner's assertion that a pension need be for life. Nor is there corroboration for his suggestion that a pension cannot be conditional upon certain factors, such as continued medical verification of disability. Similarly, for annuities this hoary definition from this Court's earliest days still applies in the present: "The term annuity has been variously defined, but the definitions, although differing in form, are substantially alike in meaning. In general terms, it is a yearly payment of a certain sum of money granted to another in fee for life or for years". Estate of Jackson v. Commissioner, 3 B.T.A. 832, 834 (1926) (quoting 2 Ruling Case Law 2 (emphasis omitted)). As with pensions, there is nothing to establish that annuities must be for life and cannot be terminable.

**[*17]** LGERS is a pension plan: It was established by the State of North Carolina to provide definitely determinable, periodic retirement payments to former employees. Section 128-22 of the General Statutes of North Carolina designates LGERS as a governmental plan within the meaning of section 414(d) and requires that the plan operate consistently with section 401(a)(1). Accordingly, payments from LGERS are payments from a "retirement pension or annuity" as those words are used in section 1.104-1(b), Income Tax Regs. The parties have stipulated that petitioner's disability retirement allowance was computed with reference to petitioner's age, length of service, and average final compensation before his disability retirement. Thus the amounts he received are from "a retirement pension * * * determined by reference to the employee's age or length of service, or the employee's prior contributions" and the exclusion for workmen's compensation under section 104(a)(1) does not apply. See sec. 1.104-1(b), Income Tax Regs.

Because we have found that petitioner's disability retirement allowance under LGERS was a retirement pension determined by reference to his age and length of service, we need not address the extent to which petitioner in 2004 upon his 60th birthday was transferred from a disability retirement allowance to a service retirement allowance. We have established that petitioner's disability retirement allowance was not received under a workmen's compensation act or a

[*18] statute in the nature of such, <u>see</u> sec. 1.104-1(b), Income Tax Regs., and so was not excludable from gross income under section 104. If petitioner remained on a disability retirement allowance after 2004, then the treatment of his payments--includible as they were in gross income--was unchanged. If petitioner in 2004 ceased to receive a disability retirement allowance and was considered thereafter "a beneficiary in receipt of a service retirement allowance", <u>see</u> N.C. Gen. Stat. Ann. sec. 128-27(e)(6), then consistently with N.C. Gen. Stat. Ann. sec. 128-27(b12) he would receive a pension calculated by reference to his age and length of service. Such a pension too would not fall within the section 104(a)(1) exclusion from gross income. <u>See</u> sec. 1.104-1(b), Income Tax Regs.

V.     <u>Classification of Petitioner's FRSWPF Retirement Income</u>

Respondent suggests that petitioner's income from FRSWPF appears to have been reported on petitioner's original Federal income tax return. We note that respondent's statement is at odds with the notice of deficiency, in which he allocated the $2,324 of taxable retirement income shown on petitioner's return to LGERS, not FRSWPF.

However, we agree with respondent that petitioner has not asserted a dispute regarding the FRSWPF payment's taxability and so has conceded it. <u>See,</u> <u>e.g.,</u> <u>Thiessen v. Commissioner</u>, 146 T.C. 100, 106 (2016) ("[I]ssues and

[*19] arguments not advanced on brief are considered to be abandoned."); see also

Rule 34(b)(4) (providing that issues not raised in a petition are deemed to be

conceded). Even were the FRSWPF income contested, it is not in the nature of

workmen's compensation. A fireman becomes eligible for the FRSWPF fixed

monthly pension once he reaches the age of 55 years and either (1) contributes to

the fund for 20 years or (2) contributes for a lesser period of time but becomes

totally and permanently disabled in the course of his official duties. Because

eligibility for the FRSWPF pension is determined by reference to the employee's

age and prior contributions, it is not excludable from gross income under section

104(a)(1). See sec. 1.104-1(b), Income Tax Regs. Petitioner also has not raised,

nor are there sufficient facts in the record enabling us to evaluate, the extent to

which FRSWPF payments may be excludable from gross income as amounts

received through accident or health insurance. See secs. 104(a)(3), 105.

VI.    Conclusion

The fireman's vocation is not an easy one. Petitioner fought fires for over

24 years and retired disabled. But Lady Justice is blind, and the tax law takes its

toll without regard for sentiment. It is true that "nobody owes any public duty to

pay more than the law demands". Commissioner v. Newman, 159 F.2d 848, 851

(2d Cir. 1947) (Hand, J., dissenting), rev'g 5 T.C. 603 (1945). But where the law

[*20] demands a result, the courts are bound to enforce it. Petitioner's income from LGERS and FRSWPF is in both instances a retirement pension determined by reference to his age or length of service, or his prior contributions, and under the Code cannot be excluded from his gross income for the 2012 tax year.

We have considered all of the parties' arguments, and to the extent not discussed above, conclude that those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered for respondent.