T.C. Memo. 2017-212

UNITED STATES TAX COURT

JACK HOWARD TAYLOR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket No. 17349-15.                    Filed October 25, 2017.

P moved to vacate or revise the Court's decision in <u>Taylor v. Commissioner</u>, T.C. Memo. 2017-132.

<u>Held</u>: P's motion will be denied because it was not filed timely and because P failed to argue or show any unusual circumstances or substantial error justifying the Court's revisitation of its decision.

Jack Howard Taylor, pro se.

<u>Corey R. Clapper</u> and <u>Amy Dyar Seals</u>, for respondent.

_____

[*]This opinion supplements our previously filed Memorandum Opinion <u>Taylor v. Commissioner</u>, T.C. Memo. 2017-132.

[*2]                    SUPPLEMENTAL MEMORANDUM OPINION

LARO, Judge:  Currently before the Court is petitioner's motion under Rule

162[1] to vacate or revise our decision in Taylor v. Commissioner (Taylor I), T.C.

Memo. 2017-132.  In Taylor I, we held that distributions to petitioner by the Local

Governmental Employees' Retirement System of North Carolina (LGERS) and the

North Carolina Firemen and Rescue Squad Workers' Pension Fund (FRSWPF)

were not excludable from gross income as amounts received under workmen's

compensation acts for injuries or sickness because they are retirement pensions

determined by reference to petitioner's age or length of service or his prior

contributions.  We will deny petitioner's motion for the reasons stated below.

                              Background

For convenience, we incorporate the background facts recited in Taylor I

and supplement them as necessary for this opinion.

I.      Petitioner's Service as a Fireman and Subsequent Retirement

Petitioner was born in August 1944.  He was hired by the City of Asheville

Fire Department on October 18, 1966.  His last day of work was March 10, 1991,

---

[1]Unless otherwise indicated, section references are to the Internal Revenue
Code in effect at all relevant times.  Rule references are to the Tax Court Rules of
Practice and Procedure.

[*3] and he retired on disability effective June 1, 1991, in his 24th year of service with the department.

LGERS began paying petitioner a disability retirement allowance on June 1, 1991, which was computed with reference to his age, length of service, and average final compensation before his disability retirement. At an unspecified later date petitioner also began receiving a pension from FRSWPF. Petitioner turned 60 in August 2004, whereupon LGERS sent him a letter notifying him that he was being transferred from disability retirement to regular service retirement effective September 1, 2004.

## II. Petitioner's 2012 Retirement Benefits and Tax Return

For 2012 petitioner was paid $35,153 in retirement benefits by LGERS and $2,040 in retirement benefits by FRSWPF. He was issued a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., by LGERS indicating that he had received $34,829 in taxable retirement benefits during the 2012 tax year. Petitioner was also issued a Form 1099-R by FRSWPF showing that he had received $2,000 in taxable retirement benefits during the 2012 tax year. Box 7 of each Form 1099-R was marked with the distribution code "7" indicating a normal distribution.

[*4] Petitioner timely filed a Form 1040, U.S. Individual Income Tax Return, for the 2012 tax year. On his return petitioner reported $2,324 of taxable retirement income for that year. Further, petitioner did not report any dividend income on the return, notwithstanding the issuance to him of a Form 1099-DIV, Dividends and Distributions, by National Financial Services, LLC, showing ordinary dividend income of $892 and capital gain distributions of $226. Petitioner had conceded respondent's adjustments related to these items of dividend income.

III.    Notice of Deficiency and Petition

Respondent on April 6, 2015, issued a notice of deficiency to petitioner, determining a $3,806 deficiency in petitioner's Federal income tax for the 2012 taxable year. In the notice respondent made three adjustments, the first two of which petitioner conceded: (1) increased taxable dividends from zero to $892; (2) increased "Schedule D/capital gain dividends" from zero to $226; and (3) increased taxable retirement income from $2,324 to $36,829. As to the third adjustment, respondent indicated that petitioner had received taxable retirement income from two payors. For the first, LGERS, respondent identified $2,324 as shown on petitioner's return and increased that amount by $32,505 to arrive at the $34,829 of taxable income reported on the Form 1099-R generated by LGERS. For the second, FRSWPF, respondent identified zero as shown on petitioner's

**[*5]** return and increased that amount by $2,000 to reflect the taxable income reported on the FRSWPF Form 1099-R.

The notice of deficiency specified that the last date to file a petition with this Court was July 6, 2015. The petition was received by the Court and filed in the morning of July 7, 2015. It was signed and dated by petitioner on July 5, 2015, and bore a postmark indicating that it was mailed by FedEx Standard Overnight service on July 6, 2015. Since the petition was mailed timely using a designated private delivery service, see Notice 2015-38, 2015-21 I.R.B. 984, it is treated as filed timely, see sec. 7502(a), (f).

IV.    Opinion and Decision in Taylor I

For the reasons explained in Taylor I we held that the amounts petitioner received from LGERS were from "a retirement pension * * * determined by reference to the employee's age or length of service, or the employee's prior contributions" and the exclusion from gross income for workmen's compensation under section 104(a)(1) did not apply. See sec. 1.104-1(b), Income Tax Regs. As to petitioner's income from FRSWPF, we found that petitioner had not asserted a dispute regarding the FRSWPF payments' taxability and thus had conceded it. Even were the FRSWPF income contested, we determined that it was not in the nature of workmen's compensation--and thus not excludable from gross income

**[*6]** under section 104(a)(1)--because eligibility for the FRSWPF pension is determined by reference to the employee's age and prior contributions.  See id.

Accordingly, we held that a decision would be entered for respondent.  We filed our opinion in Taylor I on July 5, 2017.  On that same day, we entered a decision determining that there was a $3,806 deficiency in income tax due from petitioner for the 2012 taxable year.

## V.    Petitioner's Motion To Vacate or Revise

On August 8, 2017, petitioner filed a motion to vacate or revise our decision in Taylor I.  The motion was mailed from Asheville, North Carolina, by FedEx Priority Overnight service on August 7, 2017, as evidenced by the shipping label on the envelope in which the motion arrived at the Court.  Pursuant to this Court's order, respondent on August 22, 2017, filed a response to petitioner's motion.

## Discussion

## I.    Rule 162 Motions

Petitioner filed his motion under Rule 162, which provides:  "Any motion to vacate or revise a decision, with or without a new or further trial, shall be filed within 30 days after the decision has been entered, unless the Court shall otherwise permit."  The rule does not specify any standard by which a motion to vacate or revise a decision should be judged.  Our caselaw, however, has

**[\*7]** developed certain heuristics for assessing such motions. Thus, the decision to grant a motion to vacate lies within this Court's discretion. See, e.g., <u>Kun v. Commissioner</u>, T.C. Memo. 2004-273, 2004 WL 2712202, at \*2 (citing <u>Vaughn v. Commissioner</u>, 87 T.C. 164, 166-167 (1986)), <u>aff'd without published opinion</u>, 157 F. App'x 971 (9th Cir. 2005). We often look to rule 60 of the Federal Rules of Civil Procedure as a guidepost by which to resolve Rule 162 motions. See <u>Kun v. Commissioner</u>, 2004 WL 2712202, at \*2 (citing <u>Cinema '84 v. Commissioner</u>, 122 T.C. 264, 267-268 (2004); <u>Estate of Miller v. Commissioner</u>, T.C. Memo. 1994-25; and <u>Pietanza v. Commissioner</u>, T.C. Memo. 1990-524, <u>aff'd without published opinion</u>, 935 F.2d 1282 (3d Cir. 1991)). Under that rule, motions to vacate generally are not granted without a showing of unusual circumstances or substantial error, such as mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, fraud, or other reason justifying relief. See, e.g., <u>Intermountain Ins. Serv. of Vail, LLC v. Commissioner</u>, 134 T.C. 211, 216 (2010), <u>rev'd</u>, 650 F.3d 691 (D.C. Cir. 2011), <u>vacated and remanded</u>, 566 U.S. 972 (2012); <u>Mitchell v. Commissioner</u>, T.C. Memo. 2013-204, at \*8, <u>aff'd</u>, 775 F.3d 1243 (10th Cir. 2015). Nonetheless, "[r]econsideration is not the appropriate forum for rehashing previously rejected arguments or tendering new legal theories to reach

**[\*8]** the end result desired by the moving party." <u>Estate of Quick v. Commissioner</u>, 110 T.C. 440, 441-442 (1998).

## II.     The Parties' Arguments

### A.     Petitioner's Position

Petitioner advances several arguments in support of his motion.  First, he states that he had never disputed the payments from FRSWPF and that respondent erred in broaching that issue.

Second, petitioner asserts that the State law definitions of "retirement pension" and "annuity" require them to be "payments for life", <u>see</u> N.C. Gen. Stat. Ann. sec. 128-21(3), (15) (Westlaw 2012), meaning that the payments he received from LGERS did not fall within the category of a "retirement pension" not excluded from gross income by section 104(a)(1), <u>see</u> sec. 1.104-1(b), Income Tax Regs.  Petitioner's position is that North Carolina law does not conflict with the definition of a pension under Federal law, <u>see</u> sec. 1.401-1(b)(1)(i), Income Tax Regs., and that there is nothing in Federal law to dispute petitioner's assertion that a pension need be for life.  Petitioner adds that under Federal law there are defined benefit plans and defined contribution plans, and LGERS is a governmental plan within the meaning of section 414.

**[\*9]**   Third, petitioner maintains that respondent erred in drawing a parallel between petitioner's situation and that of the taxpayer in Picard v. Commissioner, 165 F.3d 744 (9th Cir. 1999), rev'g T.C. Memo. 1997-320, where the Court of Appeals held in the taxpayer's favor on the excludability of disability retirement income.

Fourth, petitioner submits that while North Carolina law allows disability beneficiaries to "convert" a disability retirement allowance to a reduced service retirement allowance if they are engaged or may engage in a gainful occupation paying more than a certain amount, N.C. Gen. Stat. Ann. sec. 128-27(e)(1), the rule in paragraph (e)(6) of that section, which treats disability retirement beneficiaries as service retirement beneficiaries when they reach the earliest date on which they would have qualified for an unreduced service retirement allowance, uses a different word:  "considered".  Thus, petitioner believes that beneficiaries on disability may not convert to a service retirement if they never return to duty or earn more than the difference between their reduced disability allowance and the amount they would have received as a service allowance. Petitioner adds that, unlike the disability benefit payments received by the taxpayer in Tateosian v. Commissioner, T.C. Memo. 2008-101, his disability retirement allowance was never formally transferred to a service retirement

[*10] allowance and the amount was not affected by his reaching age 60 or any other subsequent event.

B.    Respondent's Argument

Respondent urges that the Court sustain its decision as entered.  He first argues that petitioner's motion was not timely.  Rule 162 allows for motions to revise or vacate to be filed within 30 days of the entry of a decision.  Respondent points out that the decision in this case was entered on July 5, 2017, whereas petitioner's motion was filed on August 8, 2017, 34 days after the decision was entered.  The timely mailing rule of section 7502 does not apply, respondent maintains, because the motion was mailed on August 7, 2017, which was three days after the deadline for filing it.

Respondent disputes that the FRSWPF payments are not at issue, because while the taxable amount of the total payments was reported as $2,000, petitioner on his 2012 income tax return reported $2,324 as taxable retirement income.  Because of this discrepancy, respondent maintains that he appropriately treated both sources of retirement income as relevant.  Respondent also states that it is not clear why petitioner brought up that LGERS is a governmental plan, because petitioner does not elaborate on that argument further.  Respondent adds that these two arguments are unseasonable because petitioner could have argued them earlier

**[*11]** in the case but did not. As to the remainder of petitioner's motion, respondent argues that it relies on arguments previously made by petitioner and resolved by the Court in Taylor I.

III.    Timeliness of Petitioner's Motion

We agree with respondent that petitioner's motion to vacate or revise is not timely. Rule 162 requires that such motions be filed within 30 days after the decision in a case has been entered. The decision in this case was entered on July 5, 2017. Petitioner could file a Rule 162 motion at any time through August 4, 2017, which day was not a Saturday, Sunday, or legal holiday in the District of Columbia. See sec. 7503. Petitioner's motion was mailed on August 7, 2017, and received by this Court on the following day. Because the postmark on the envelope in which the motion was mailed is dated after August 4, 2017, the rule of section 7502(a) that a document is treated as timely filed when timely mailed does not apply. See also sec. 301.7502-1(a), Proced. & Admin. Regs. Thus, the motion is late, having been filed late on August 8, 2017, which is four days after the time allowed by Rule 162 for such motions to be filed.

IV.    Disposition of Petitioner's Motion

Because petitioner's motion is not timely, and because petitioner did not move for leave to file his Rule 162 motion out of time, we would be justified in

[*12] denying it on those grounds alone. However, were we to resolve the motion on its merits, petitioner still would not prevail, because he has failed to argue any unusual circumstances or substantial error, which is the standard to which we hold Rule 162 motions. See Mitchell v. Commissioner, at *8.

Most of petitioner's motion consists of rehashed arguments we had rejected in Taylor I. Such arguments are not appropriate grounds on which reconsideration in a case may be granted. See Estate of Quick v. Commissioner, 110 T.C. at 441-442. Further, we have already determined in Taylor I that petitioner had not disputed the FRSWPF payments' taxability and thus had conceded the issue; the parties appear to agree on this point, and we consider the issue resolved. Finally, petitioner's argument that LGERS is a governmental plan is not relevant and would not affect our decision in this case even if it had been raised on brief. At any rate, because this argument was not advanced earlier, it is too late to raise it now. See, e.g., Thiessen v. Commissioner, 146 T.C. 100, 106 (2016) ("[I]ssues and arguments not advanced on brief are considered to be abandoned."); see also Rule 34(b)(4) (providing that issues not raised in a petition are deemed conceded).

In sum, petitioner's sole justification for seeking to have this Court's decision vacated is that he believes the result reached therein to be incorrect. This is not a sufficient reason to justify our revisiting the decision. Reconsideration is

**[*13]** not appropriate for rehashing previously rejected legal arguments or tendering new legal theories. Estate of Quick v. Commissioner, 110 T.C. at 441-442. Thus, we will deny petitioner's motion to vacate or revise the decision in this case.

V.     Conclusion

We have concluded that petitioner's motion under Rule 162 to vacate or revise the decision entered in Taylor I is to be denied for two reasons. First, the motion was not timely. Second, even if we were to allow the motion to stand and decide it on its merits, it fails to meet the standard for granting Rule 162 motions.

We have considered all of the parties' arguments, and to the extent not discussed above, conclude that those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

An appropriate order will be issued.